Teresa C. Chow (SBN 237694)
Jihee Ahn (SBN 292659)
**BAKER & HOSTETLER LLP**
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA  90025-0509
Telephone:     310.820.8800
Facsimile:      310.820.8859
Email:          tchow@bakerlaw.com
                jahn@bakerlaw.com

*Attorneys for Defendants*
IAC SEARCH & MEDIA, INC. and
OOVOO, LLC

*(additional counsel listed on next page)*

## IN THE UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| MYMAIL, LTD.,<br><br>              Plaintiff,<br><br>       v.<br><br>OOVOO, LLC,<br><br>              Defendant. | Case No.: 17-cv-04487-LHK (SVK)<br>[Related Case: 17-cv-04488-LHK (SVK)]<br><br>[Honorable Lucy H. Koh]<br><br>**DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS THAT ALL ASSERTED PATENT CLAIMS ARE INVALID**<br><br>Date: March 1, 2018<br>Time: 1:30 p.m.<br>Courtroom: 8 |
| MYMAIL, LTD.,<br><br>              Plaintiff,<br><br>       v.<br><br>IAC SEARCH & MEDIA, INC.,<br><br>              Defendant. | [Concurrently filed with (Proposed) Order]<br><br>Action Filed:  November 18, 2016<br>Action Transferred:  August 7, 2017 |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

T. Cy Walker (*pro hac vice*)
Robert L. Hails (*pro hac vice*)
Robert E. Niemeier (*pro hac vice*)
**BAKER & HOSTETLER LLP**
Washington Square, Suite 1100
1050 Connecticut Avenue, N.W.
Washington, DC  20036-5403
Telephone:     202.861.1500
Facsimile:      202.861.1783
Email:          cwalker@bakerlaw.com
                rhails@bakerlaw.com
                rniemeier@bakerlaw.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF CONTENTS

**Page(s)**

I.      INTRODUCTION ....................................................................................................2

II.     THE PATENTS IN SUIT ........................................................................................3

III.    LEGAL STANDARDS ............................................................................................7

        A.      Motion for Judgment on the Pleadings under Fed. R. Civ. P. 12(c)..........7

        B.      Motions for Judgment on the Pleadings for Patent-Eligibility Challenges
                under 35 U.S.C. § 101.................................................................................8

        C.      Patent-Eligible Subject Matter under 35 U.S.C. § 101 ............................8

IV.     ARGUMENT ...........................................................................................................9

        A.      *Alice* Step One:  The Claims Are Directed to the Abstract Idea of Updating
                Software Stored on a Computer....................................................................9

                1.      Courts uniformly have found claims directed to updating software
                        stored on a computer to be abstract.................................................9

                2.      The claims merely implement "brick-and-mortar" activities in an
                        Internet environment. ...................................................................12

                3.      The claims do not improve computer functionality. ...................13

        B.      *Alice* Step Two:  The Claims Lack Other Recitations to Transform the Claims
                into Patent-Eligible Subject Matter...........................................................14

V.      CONCLUSION......................................................................................................16

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affinity Labs of Tex., LLC v. Amazon, Inc.*,
573 U.S. __, 838 F.3d 1266 (Fed. Cir. 2016) ...........................................................7

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
134 S. Ct. 2347 (2014) .................................................................... *passim*

*Bancorp Servs., LLC v. Sun Life Assurance Co.*,
687 F.3d 1266 (Fed. Cir. 2012)...........................................................8

*BASCOM Glob. Internet Servs. v. AT&T Mobility LLC*,
827 F.3d 1341 (Fed. Cir. 2016)..........................................................14

*Bilski v. Kappos*,
561 U.S. 593 (2010)............................................................................8

*buySAFE, Inc. v. Google, Inc.*,
765 F.3d 1350 (Fed. Cir. 2014) .........................................................8

*Chavez v. United States*,
683 F.3d 1102 (9th Cir. 2012) ...........................................................7

*Clear with Computers, LLC v. Altec Indus., Inc.*,
Case No. 6:14-cv-79-JRG, 2015 WL 993392 (E.D. Tex. Mar. 3, 2015)................................15

*Content Extraction & Transmission, LLC v. Wells Fargo Bank, Nat'l Ass'n*,
776 F.3d 1343 (Fed. Cir. 2014)....................................................8, 16

*Credit Acceptance Corp. v. Westlake Servs.*,
859 F.3d 1044 (Fed. Cir. 2017) .......................................................13

*Dworkin v. Hustler Magazine Inc.*,
867 F.2d 1188 (9th Cir. 1989) ...........................................................7

*Elec. Power Grp., LLC v. Alstom S.A.*,
830 F.3d 1350 (Fed. Cir. 2016)......................................................9, 14

*Enfish, LLC v. Microsoft Corp.*,
822 F.3d 1327 (Fed. Cir. 2016).........................................................9

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
792 F.3d 1363 (Fed. Cir. 2015)........................................................15

*Intellectual Ventures I LLC v. Motorola Mobility LLC*,
81 F. Supp. 3d 356 (D. Del. 2015)...........................................11, 12, 14

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

iv

DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS THAT ALL ASSERTED PATENT CLAIMS ARE INVALID
CASE NO.: 17-cv-04487-LHK (SVK)

*Intellectual Ventures I LLC v. Symantec Corp.,*
   838 F.3d 1307 (Fed. Cir. 2016).....................................................................................9, 12

*Manzarek v. St. Paul Fire & Marine Ins. Co.,*
   519 F.3d 1025 (9th Cir. 2008) ..............................................................................................7

*Mortgage Grader, Inc. v. First Choice Loan Servs. Inc.,*
   811 F.3d 1314 (Fed. Cir. 2016)...........................................................................................16

*Papst Licensing GmbH & Co. KG v. Xilinx Inc.,*
   193 F. Supp. 3d 1069 (N.D. Cal. 2016) ................................................................................8

*Personalized Media Communications, LLC v. Amazon.com, Inc.,*
   161 F. Supp. 3d 325 (D. Del. 2015) .........................................................10, 11, 12, 14, 15

*Planet Bingo, LLC v. VKGS LLC,*
   576 F. App'x 1005 (Fed. Cir. 2014) ...................................................................................13

*Shaw v. Hahn,*
   56 F.3d 1128 (9th Cir. 1995) ................................................................................................7

*Shwarz v. United States,*
   234 F.3d 428 (9th Cir. 2000) ................................................................................................7

*In re TLI Commc'ns LLC Patent Litig.,*
   823 F.3d 607 (Fed. Cir. 2016)............................................................................................13

*White Knuckle Gaming, LLC v. Electronic Arts, Inc.,*
   Case No. 1:15-cv-150, 2016 WL 3129133 (D. Utah June 2, 2016) ............................. *passim*

**Statutes**

35 U.S.C. § 101........................................................................................................... *passim*

**Rules**

Fed. R. Civ. P. 12.......................................................................................................................7

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

v

**TO THE HONORABLE COURT AND TO ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on March 1, 2018 at 1:30 p.m., or as soon thereafter as the matter may be heard, before the Honorable Lucy H. Koh in Courtroom 8, 4th Floor, San Jose Courthouse of the United States District Court, Northern District of California, located at 280 S. First Street, San Jose, CA 95113, Defendants IAC Search & Media, Inc. ("IAC") and ooVoo, LLC ("ooVoo") (collectively, "Defendants") will, and hereby do, move for judgment on the pleadings under Federal Rule of Civil Procedure 12(c).

This Motion is based upon this Notice of Motion, the attached Memorandum of Points and Authorities, the Proposed Order, the complete files and records in this action, and upon such further oral and written argument and evidence as may be presented at or before the hearing on this matter.

## MOTION AND RELIEF REQUESTED

Defendants move for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) that the patent claims asserted in Plaintiff's Complaints recite ineligible subject matter and therefore are invalid under 35 U.S.C. § 101.

Dated:    October 31, 2017          Respectfully submitted,


                                     BAKER & HOSTETLER LLP


                                     By:    */s/ Teresa C. Chow*
                                            Teresa C. Chow
                                            Jihee Ahn
                                            T. Cy Walker
                                            Robert L. Hails
                                            Robert E. Niemeier

                                     Attorneys for Defendants
                                     IAC SEARCH & MEDIA, INC. AND OOVOO, LLC

1

DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS THAT ALL ASSERTED PATENT CLAIMS ARE INVALID
CASE NO.: 17-cv-04487-LHK (SVK)

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.   INTRODUCTION**

Patent claims that are directed to an abstract idea and lack an inventive concept are invalid under 35 U.S.C. § 101 for failure to describe patentable subject matter. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. __, 134 S. Ct. 2347, 2354 (2014). The clams of the two patents asserted in this case fall squarely within this principle.

The claims of both asserted patents—which are related and share a common specification—are directed to the abstract idea of updating software stored on a computer. The claims lack an inventive concept because they do nothing more than implement this abstract idea in an Internet environment using generic computer components and processes that are conventional and routine—processes such as (1) displaying information on a user's Internet-enabled device based on data stored in a database on that device; (2) sending information about the database to a server; (3) determining from that information that the database needs to be updated; (4) receiving the updated data via the Internet; (5) updating the database; and (6) displaying information on the device based on the updated database. Courts considering comparable claims consistently have found that updating computer software is an abstract idea and that automating update processes over a network using generic components is insufficient to transform the abstract idea into patent-eligible subject matter.

Nor are any inventive concepts present in the claims' other limitations. The claims' description of a toolbar and its components—toolbar attributes, toolbar databases, toolbar functions, name-value pairs, opening URLs, enabling or disabling buttons etc.—merely directs the claims' abstract idea to a specific technical implementation. It is well settled that an abstract idea does not become non-abstract merely by applying it to a particular field of use or technological environment. Similarly, the claims' description of the types of information that are exchanged between the user device and the server (*e.g.*, revision levels, IP addresses, time and date) are basic types of data that are routinely exchanged in network-based software update processes and do not represent inventive concepts. The claims, therefore, are invalid.

/ / /

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## II.     THE PATENTS IN SUIT

Two patents are asserted in these related cases:  U.S.P. 8,275,863 (the "'863 patent") (Ex. 1) and U.S.P. 9,021,070 (the "'070 patent") (Ex. 2).  These two patents share a common lineage, have identical figures, and have substantially similar written descriptions.[1]  For brevity, citations herein to the patents' descriptions are limited to the '863 patent.

The patents relate to "digital data networks and, more particularly, to network access and to minimizing unauthorized interception of data and denial of network services."  Ex. 1, col. 1:26-29.  As part of their disclosure, they also describe techniques for updating toolbars (also called "button bars" in the patents) used with personal computers.  *Id.* col. 10:7-11:16.  FIG. 16 of the patent depicts a toolbar that includes an array of buttons:



**Ex. 1, FIG. 16**

The patents admit generally that toolbars were known and in widespread use.  *Id.*, col. 10:7-13 ("All functions may be initiated through the human interface—a Toolbar (also described in the art as a button bar and basic examples of which may be found in many present day computer applications.)").  The patents' purported improvement over the prior art toolbars is the ability to dynamically change or update the toolbar software and data stored in the computer via the Internet.  *Id.*, col. 10:15-17.

The toolbar is displayed on a personal computer 110 (***blue***).  *See* Ex. 1, FIG. 2 (below).  The computer has a button bar database 208 (***red***) that stores attributes defining the toolbar.  The attributes may, for example: 1) define a caption of the button, 2) identify whether the button is enabled or not, 3) identify an execution type of the button, 4) describe button functionality, and

---

[1] The '863 patent was filed on April 16, 2003, and issued on September 25, 2012.  It is a divisional application of U.S. Patent No. 6,571,290, filed on June 19, 1998.  The '070 patent was filed on June 20, 2013, and issued on April 28, 2015.  It is a continuation of U.S. Application No. 13/573,311, filed on September 10, 2012, which in turn is a continuation application of the '863 patent.  Both patents claim priority to the same provisional application, filed on June 19, 1997.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

5) identify files or URLs to be executed when the button is actuated. *Id.*, col. 10:38-11:4.



**Ex. 1, FIG. 2 (annotated)**

The personal computer 110 also has other databases 204, 206, 210 (***gray***) that store operational parameters used by the computer's software, such as telephone numbers to connect to internet service providers (database 204), access information associated with the telephone numbers (database 206), and information regarding the computer's user (database 210). *Id.*, col. 9:20-24.

The computer 110 executes software, called a client dispatch application 200 (***purple***) that, among other things, initiates a "pinger" to update the computer 110. *Id.*, col. 11:44-47, 12:16-17; 17:30-32. The pinger provides revision information for the client dispatch application 200 and for the databases 204, 206, 208, 210 to an access service 106 (***green***) at a network server. *Id.*, col. 11:47-52, 12:17-24, 17:32-40. The access service 106 determines, based on the revision levels, what updates are required for the application 200 and/or databases 204, 206, 208, 210. If any are required, the access service 106 sends the updates to the computer 110. *Id.*, col. 17:40-66. The pinger works identically for the toolbar database 208 and for the other databases 204, 206, 210. *Id.*, col. 11:44-52, 12:16-24, 17:30-63.

Turning to the claims of the patents, they all recite methods for modifying a toolbar by updating toolbar parameters stored in a database. As shown in the table below, claim 1 of the

'863 patent and claim 1 of the '070 patent contain similar language and structure, and recite essentially the same basic steps: (1) displaying a toolbar having buttons defined by attributes in a database; (2) sending information about the database to a server; (3) the server determining that the database needs to be updated; (4) receiving the updated data; (5) updating the database; and (6) displaying the toolbar based on the updated database.

| Claim 1 of the '863 patent | Claim 1 of the '070 patent |
|---|---|
| 1. A method of modifying a toolbar, comprising the steps of: | 1. A method for dynamically modifying a toolbar, the method comprising: |
| a user Internet device displaying a toolbar comprising one or more buttons, <br><br> the toolbar defined by toolbar data stored in one or more toolbar-defining databases, <br><br> the toolbar data comprising a plurality of attributes, each attribute associated with a button of the toolbar, <br><br> wherein for each button of the toolbar, at least one of the plurality of attributes identifying a function to be performed when the button is actuated by the user Internet device; | displaying the toolbar, at a user Internet device, that includes one or more toolbar buttons, <br><br> the toolbar defined by toolbar data stored in one or more toolbar-defining databases, <br><br> the toolbar data comprising a plurality of toolbar button attributes associated with the one or more toolbar buttons of the toolbar, <br><br> wherein at least one of the plurality of toolbar button attributes identifies a function to be performed by a specific toolbar button upon actuation of the specific toolbar button; |
| the user Internet device automatically sending a revision level of the one or more toolbar-defining databases to a predetermined network address; | invoking, from the user Internet device without user intervention, communication of information associated with the one or more toolbar-defining databases to a server associated with a network address; |
| | receiving, at the server, the information associated with the one or more toolbar-defining databases; |
| a server at the predetermined network address determining, from the revision level, the user Internet device should receive the toolbar update data; | determining, based on the information associated with the one or more toolbar-defining databases, that the user Internet device should receive updated toolbar data; |

BAKER & HOSTETLER LLP<br>ATTORNEYS AT LAW<br>LOS ANGELES

| Claim 1 of the '863 patent | Claim 1 of the '070 patent |
|---|---|
| the user Internet device receiving toolbar update data from the Internet; | receiving, at the user Internet device, the updated toolbar data in response to determining that the user Internet device should receive the updated toolbar data; |
| the user Internet device initiating without user interaction an operation to update the toolbar data in accordance with the toolbar update data received; | initiating, at the user Internet device and without user interaction, an operation to update the toolbar data in accordance with the received updated toolbar data; |
| the user Internet device updating, by the operation, the toolbar data in accordance with the toolbar update data, thereby producing updated toolbar data, the updating comprising at least one of the following steps (a) and (b), each respectively comprising:<br><br>(a) writing at least one new attribute to the original toolbar data, wherein the writing at least one new attribute to the toolbar data comprises changing the one or more buttons of the toolbar by adding a button; and<br><br>(b) updating at least one attribute of the toolbar data; and | updating the toolbar data at the user Internet device based on the operation and in accordance with the updated toolbar data, thereby updating the toolbar data, the updating comprising at least one member of a group comprising (a) and (b):<br><br>(a) updating the toolbar data to include at least one new attribute of the toolbar data to change the toolbar by adding a toolbar button to the toolbar; and<br><br>(b) updating the toolbar data to modify an attribute of at least one of the one or more toolbar buttons of the toolbar; and |
| the user Internet device displaying the toolbar as defined by the updated toolbar data. | displaying at the user Internet device the toolbar as defined by the updated toolbar data, |
|  | wherein the information associated with the toolbar data includes at least one member of a group comprising a revision level, version, time, date, user ID, account owner ID, PAP ID, IP address, session keys, billing data, name, address, account information, connection history, procedures performed by a user, group ID, e-mail address, e-mail ID, e-mail password, residential address, and phone number. |

According to its infringement contentions, Plaintiff MyMail, Ltd. ("MyMail") alleges

infringement by IAC and/or ooVoo of the following claims of the '863 patent:  1-5, 9-23, 16-17,

19-20, and 23.  Claim 1, reproduced above, is the only independent claim asserted.  The

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

remaining asserted claims all depend directly or indirectly from claim 1, and they introduce only minor, implementation-specific variations on that claim.

MyMail's infringement contentions also allege infringement by IAC and/or ooVoo of the following claims of the '070 patent: 1-9, 11-13, and 15-22.  Asserted claims 1, 5, 9, and 17 are independent claims that recite substantially similar limitations.  The other claims asserted depend from the four asserted independent claims and introduce only minor, implementation-specific variations on those claims.

## III.   LEGAL STANDARDS

### A.   Motion for Judgment on the Pleadings under Fed. R. Civ. P. 12(c)

"Judgment on the pleadings is properly granted when, accepting all factual allegations in the complaint as true, there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law."  *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (quotation marks and alteration omitted).  Like a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a motion under Rule 12(c) challenges the legal sufficiency of the claims asserted in the complaint.  *Id.*  A Rule 12(c) motion is "functionally identical" to a Rule 12(b)(6) motion, and courts apply the "same standard."  *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989).

For purposes of ruling on a Rule 12(c) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  The Court, however, need not accept as true allegations contradicted by judicially noticeable facts (*see Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000)) and it "may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(c) motion into a motion for summary judgment (*see Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995)).  Further, in the context of a motion for judgment on the pleadings, "the practice of taking note of fundamental economic concepts and technological developments is well supported by [Federal Circuit] precedents."  *Affinity Labs of Tex., LLC v. Amazon, Inc.*, 838 F.3d 1266, 1270 (Fed. Cir. 2016).

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**B.     Motions for Judgment on the Pleadings for Patent-Eligibility Challenges under 35 U.S.C. § 101**

The issue of patent eligibility under § 101 is a question of law that a district court properly may resolve on a motion for judgment on the pleadings.  *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1351 (Fed. Cir. 2014); *Papst Licensing GmbH & Co. KG v. Xilinx Inc.*, 193 F. Supp. 3d 1069, 1078 (N.D. Cal. 2016) (granting judgment on the pleadings that the asserted claims of two patents were directed to patent-ineligible subject matter and therefore invalid under § 101).

Although claim construction sometimes may be necessary to resolve whether a patent claim is directed to patent-eligible subject matter, claim construction "is not an inviolable prerequisite to a validity determination under § 101." *Bancorp Servs., LLC v. Sun Life Assurance Co.*, 687 F.3d 1266, 1273 (Fed. Cir. 2012).  Where the court has a "full understanding of the basic character of the claimed subject matter," the question of patent eligibility properly may be resolved without the need to construe the claims.  *Content Extraction & Transmission, LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014).

**C.     Patent-Eligible Subject Matter under 35 U.S.C. § 101**

Section 101 "defines the subject matter that may be patented under the Patent Act." *Bilski v. Kappos*, 561 U.S. 593, 601 (2010).  Under § 101, the scope of patentable subject matter encompasses "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." *Id.* (quoting 35 U.S.C. § 101).  These categories are broad, but they are not limitless.  Section 101 "contains an important implicit exception:  Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice*, 134 S. Ct. at 2354 (quotation marks omitted).

The determination whether a claim recites patent-eligible subject matter under § 101 is guided by the two-step analytical framework set forth in *Alice*. *Id.* at 2355.  The first step requires determining whether the claims are directed to a law of nature, physical phenomenon, or abstract idea. *Id.* If so, the second step requires determining whether the claim elements, considered individually and as an ordered combination, "amount to significantly more" than the

8

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

patent-ineligible concept.  *Id.*  The second step has been characterized as a determination of whether the claims contain an "inventive concept" in the application of the ineligible concept to which the claims are directed.  *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016).

## IV.   ARGUMENT

### A.   *Alice* Step One:  The Claims Are Directed to the Abstract Idea of Updating Software Stored on a Computer.

While the claims of the patents differ in wording, all are directed to the abstract idea of updating software stored on a computer.  They recite the same basic steps:  (1) displaying a toolbar having buttons defined by attributes in a database; (2) sending information about the database to a server; (3) the server determining that the database needs to be updated; (4) receiving the updated data; (5) updating the database; and (6) displaying the toolbar with updated buttons.  Thus, "updating software stored on a computer" captures the claims' overall character.

In applying step one of the *Alice* framework, courts recognize that it is useful to "compare claims at issue to those claims already found to be directed to an abstract idea in previous cases."  *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016).  When computer-related claims are at issue, courts also look to whether a claimed process has an analog in the "brick-and-mortar" context (*see, e.g., Intellectual Ventures I LLC v. Symantec Corp.* ("*Symantec*"), 838 F.3d 1307, 1317 (Fed. Cir. 2016)), and whether the claims purport to improve the functioning of the computer itself (*see, e.g., Alice*, 134 S. Ct. at 2359).

#### 1.   Courts uniformly have found claims directed to updating software stored on a computer to be abstract.

Three district court decisions already have analyzed comparable claims relating to the use of communications networks to update software stored on computers, and all recognize that such claims are directed to abstract ideas.  The Federal Circuit affirmed two of the decisions *per curiam*, and the third decision was not appealed.

In *White Knuckle Gaming, LLC v. Electronic Arts, Inc.*, the court assessed the patentability of claims directed to updating video game parameters stored on a computer via

9

servers and the Internet.  Case No. 1:15-cv-150, 2016 WL 3129133, at *3 (D. Utah June 2,

2016), aff'd, Case No. 2016-2286, 2017 WL 1279347 (Fed. Cir. Apr. 6, 2017) (per curiam).

Claim 1 of the patent at issue[2] in *White Knuckle* recites:

> A game medium configured to provide a sports video game in conjunction with a
> video game machine, the sports video game including video game rules and video
> game character parameters, the video game character parameters including video
> game character performance parameters associated with individual video game
> characters, the game medium being configured to cause the video game machine
> to perform a method comprising:
>
> loading video game data stored by the game medium into a random access
> memory of the video game machine for playing the video game, the video game
> data including the video game rules and a particular video game character
> performance parameter associated with a particular individual video game
> character associated with a particular real-life sports athlete, wherein the
> particular video game performance parameter is based at least in part on a real-life
> performance of the particular real-life sports athlete playing in one or more real-
> life sporting events, the particular video game character performance parameter
> affecting the manner in which the particular individual video game character
> performs in the sports video game;
>
> during a single sports season, receiving a series of updated video game character
> performance parameters from a data server via a network including the Internet,
> wherein each of the updated video game character performance parameters in the
> series is based at least in part on one or more different real-life performances of
> the particular real-life sports athlete in one or more sporting events performed
> during the single sports season;
>
> updating the sports video game with each of the updated video game character
> performance parameters received, wherein each update changes the manner in
> which the particular individual video game character performs in the sports video
> game such that the particular individual video game character more closely
> simulates real-life performance attributes of the particular real-life athlete in the
> sports video game; and
>
> enabling a user to control the particular individual video game character in the
> sports video game using a video game controller connected to the video game
> machine.

The district court held that the claims recite an abstract idea—*i.e.*, they do nothing more than

recite "the performance of a long-established business practice—re-writing software to produce

an updated version—using a general purpose computer and the internet." *Id.*  Ultimately, the

*White Knuckle* court held the claims invalid under Section 101.  *Id.*

    In *Personalized Media Communications, LLC v. Amazon.com, Inc.*, the court held that

---

[2] The *White Knuckle* decision misidentifies the asserted patent as U.S.P. 8,545,575.  The correct
patent number, which is referenced in the parties' pleadings and briefing, is 8,540,575.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

claims directed to updates of the operating system software stored on a computer at a remote

receiving station via a broadcast transmission network recite an abstract idea.  161 F. Supp. 3d

325, 331-32 (D. Del. 2015), aff'd, 671 Fed. Appx. 777 (Fed. Cir. 2016) (per curiam).  Claim 1 of

the patent at issue[3] in *Personalized Media* recites:

> A method of reprogramming a receiver station, said receiver station including a programmable device of a specific version having a memory, a signal detector, and a receiver operatively connected to said signal detector, said method comprising the steps of:
>
> storing information specifying said specific version of said programmable device, wherein said specific version indicates a version of an operating system executing on said programmable device and controlling the processing capabilities of said programmable device;
>
> receiving an information transmission at said receiver, said information transmission including a control signal which designates a designated version of programmable device;
>
> passing said information transmission to said signal detector and detecting said control signal;
>
> determining whether said specific version is said designated version in response to said control signal;
>
> communicating operating system instructions to said memory only when said step of determining determines that said specific version is said designated version, wherein said communicating comprises erasing any operating system instructions stored within an erasable portion of said memory and then storing said communicated operating system instructions within said erasable portion of said memory; and
>
> executing said communicated operating system instructions to control operation of said programmable device.

Here, again, the court concluded that the claims recite the abstract idea of updating operating

instructions on a computer and are invalid.  *Id.* at 332.

In *Intellectual Ventures I LLC v. Motorola Mobility LLC* ("*Motorola Mobility*"), the court

recognized that claims describing distribution of software updates to users from a remote

computer system via a network are directed to an abstract idea.  81 F. Supp. 3d 356, 364-67 (D.

Del. 2015), *appealed on other grounds*, 870 F.3d 1320 (Fed. Cir. 2017).[4]  Claim 181 of U.S.P.

---

[3] The *Personalized Media* decision misidentifies the asserted patent as U.S.P. 7,883,252.  The correct patent number, which is referenced in the parties' pleadings and briefing, is 7,783,252.

[4] The court's judgment that the patent claims of U.S.P. 6,557,054 were invalid as abstract was not appealed.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

6,557,054, the representative claim of the patent at issue in *Motorola Mobility*, recites:

> A computer implemented method for distributing software updates from a remote computer system to a user station, the method comprising:
>
> presenting, at the user station, as a function of an identification of software already installed on the user station, a directory of software updates available for installation on the user station and not already installed on the user station;
>
> sending to the remote computer system over a communications network a selection of software updates for distribution to the user station, wherein the selection of software updates is selected at the user station as a function of the directory; and
>
> receiving from the remote computer system over the communications network software updates indicated by the selection.

Here, again, the court concluded that the claims recite an abstract idea and are invalid. *Id.* at 367.

A comparison of the claims of the '863 and '070 patents to those at issue in *White Knuckle*, *Personalized Media,* and *Motorola Mobility* demonstrates that the "character as a whole" of the claims at bar is no less abstract than the claims in these prior decisions. Here, as in these other cases, the claims are directed to the abstract idea of updating software on a computer from a remote source via a communications network. *White Knuckle*, 2016 WL 3129133, at * 2-3; *Personalized Media*, 161 F. Supp. 3d at 332, *Motorola Mobility*, 81 F. Supp. 3d at 367. That the claims at bar do the updating based on a determination that is made from "information associated with … toolbar-defining databases" (the '070 claims), such as a "revision level of the … toolbar-defining databases" (the '863 claims), is of no consequence. *See Personalized Media*, 161 F. Supp. 3d at 332 (finding claims that recited determining whether to update software based on a "specific version of an operating system" to be directed to an abstract idea). Thus, the claims of the '863 and '070 patents are directed to an abstract idea.

### 2. The claims merely implement "brick-and-mortar" activities in an Internet environment.

Claims that merely automate activities routinely performed in the "brick-and-mortar" context consistently have been found to be directed to an abstract idea. *See, e.g.*, *Symantec*, 838 F.3d at 1317 (holding claims directed to automated email processing to be abstract through

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

comparison to a "brick-and-mortar" post office); *Planet Bingo, LLC v. VKGS LLC*, 576 F. App'x 1005, 1007-08 (Fed. Cir. 2014) (holding claims directed to automated management of a computerized bingo game to be abstract through comparison to a manual pen-and-paper bingo game).  Here, despite the claimed use of the Internet for the purported invention in this case, a similar functionality was (and still is) available in the "brick-and-mortar" context without Internet connectivity.  Specifically, before the Internet age, software companies would generate updates to their existing software programs and store them on portable storage media (*e.g.*, floppy disks), which users would then pick up in the store or order by mail.  *See, e.g., White Knuckle*, 2016 WL 3129133, at *3 (recognizing that it was a long-standing practice of the video game industry to periodically update sports video game parameters and distribute those updates to users on storage media).  While use of the Internet to distribute software updates improves the efficiency of the distribution process, an improvement in efficiency created by moving to a new technological environment does not render a patent non-abstract.  *Alice*, 134 S. Ct. at 2355. Thus, the analogy to the "brick-and-mortar" context further demonstrates that the character of the claims as a whole is directed to an abstract idea.

### 3. The claims do not improve computer functionality.

By contrast, a claim is not abstract if it improves the functioning of a computer itself. *Alice*, 134 S. Ct. at 2359; *see also In re TLI Commc'ns LLC Patent Litig*., 823 F.3d 607, 612 (Fed. Cir. 2016) (noting that "a relevant inquiry at step one is 'to ask whether the claims are directed to an improvement to computer functionality versus being directed to an abstract idea'").  Here, however, the claims describe generic techniques for updating software stored on a computer in general terms—sending information about a database, receiving updates, updating the database, and displaying information based on the updated database.  Nothing about this improves the updating technique or the functioning of the computer itself.  Rather, at most, the claims merely contemplate using a computer as a tool for implementing this idea, further demonstrating that the character of the claims as a whole is directed to an abstract idea.  *See, e.g.*, *Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1055 (Fed. Cir. 2017) (holding that automation of previously manual processes with a generic computer "does not constitute a

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

patentable improvement in computer technology"); *Elec. Power Grp.*, 830 F.3d at 1354 (rejecting claims as invalid under § 101 where they were directed to abstract ideas that "use computers as tools," and not toward "an improvement in computers as tools").

In sum, the claims of the '863 and '070 patents are directed to a fundamental long-standing practice (updating software on a computer) that is limited to a specific technical environment (toolbars on networked computers). The claims are not directed to an improvement in computer functionality. Thus, they are directed to an abstract idea.

**B.    *Alice* Step Two:  The Claims Lack Other Recitations to Transform the Claims into Patent-Eligible Subject Matter.**

The elements of claim 1 of each of the '863 and '070 patents—whether considered individually or as an ordered combination—contain nothing that supplies an inventive concept and therefore fail to "add enough to 'transform the nature of the claim' into a patent-eligible application." *Elec. Power Grp.*, 830 F.3d at 1353 (quoting *Alice*, 134 S. Ct. at 2355).

Looking at the elements individually, the claims involve the steps of a "user Internet device" "displaying a toolbar," "sending" and "receiving" information, "updating" a database, and "displaying the toolbar" once updated. The claims also recite a server to send and receive information, and to make a determination based on the information it has received. The user Internet device and server are generic computer components—the specifications disclose nothing remarkable or inventive about either component—and they perform generic operations.

Additionally, there is nothing inventive about the claimed combination of elements. The user Internet device and server are connected to the Internet. Displaying, sending, receiving, and updating information in a database are all generic, routine functions of networked computers that repeatedly have been held insufficient to provide an inventive concept that would confer patent-eligibility. *See, e.g., White Knuckle*, 2016 WL 3129133, at *3-4; *Motorola Mobility*, 81 F. Supp. 3d at 366-67; *Personalized Media*, 161 F. Supp. 3d at 332*, discussed above. Nothing in the claims at bar represents a "non-conventional and non-generic arrangement of known conventional pieces." *BASCOM Glob. Internet Servs. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016). The claims merely recite standard techniques to update software.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

The asserted claims' other recitations also fail to provide an inventive concept.  For example, although the claims recite a toolbar with buttons, the patents admit that toolbars were already in widespread use (Ex. 1, 10:8-12), demonstrating that toolbars and buttons are not inventive concepts.  The claims' description of components of the toolbar—toolbar attributes, toolbar databases, toolbar functions, name-value pairs, opening URLs, enabling or disabling buttons, etc.—likewise do not provide an inventive concept.  These components merely limit the claims to a specific technical implementation:  a toolbar.  "An abstract idea does not become nonabstract by limiting the invention to a particular field of use or technological environment, such as the Internet."  *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1366 (Fed. Cir. 2015).  In the *White Knuckle* and *Personalized Media* cases, claims to software updates were held invalid notwithstanding claim elements that described the content of the software being updated, whether they were sports-based video games (*White Knuckle*) or operating systems (*Personalized Media*).  So too, here.  The claims' reference to the content of the software—*i.e.*, toolbars—and their underlying data structures does not reflect an inventive concept.

Similarly, the types of information that, as described in the claims, are exchanged between the user Internet device and the server (such as, *inter alia*, revision levels, IP addresses, time and date) are basic types of data that are exchanged in any network-based software update process.  IP addresses, for example, are used in every communication via the Internet.  And there is nothing inventive about using revision-level information to determine whether software or data stored on a computer should be updated.  Revision levels are the basic technique by which software publishers distinguish among different versions of their software, and it has been a long-standing business practice of the software industry to use revision-level information to determine whether updates are needed.

The claims also recite doing certain steps "automatically" and "dynamically," but "a general purpose computer with minimal programming can perform functions 'automatically' and 'dynamically,' and implementation of an abstract idea on such a computer is not an inventive concept."  *Clear with Computers, LLC v. Altec Indus., Inc.*, Case No. 6:14-cv-79-JRG, 2015 WL

993392, at *4 (E.D. Tex. Mar. 3, 2015).

Finally, while MyMail has asserted a number of other claims from each patent, there is no need to analyze them individually because they are "substantially similar and linked to the same abstract idea" as claim 1 from the respective patents.  *See, e.g., Content Extraction*, 776 F.3d at 1348 (district courts need not expressly address each asserted claim where the court concludes particular claims are representative because all the claims are "substantially similar and linked to the same abstract idea") (quotation marks omitted).  As noted above, the independent claims from the two patents at issue here recite substantially similar limitations, and the dependent claims introduce only minor, implementation-specific variations that do not affect the *Alice* analysis.  Claim 1 of each patent, therefore, is representative of the other asserted claims in the patent for purposes of evaluating patent-eligible subject matter, and there is no need to address separately each of the additionally asserted claims.  *See also Mortgage Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1324 n.6 (Fed. Cir. 2016) (court did not err in discussing only one claim where claims did not "differ in any manner that is material to the patent-eligibility inquiry"); *Alice*, 134 S. Ct. at 2359–60 (holding 208 claims to be patent-ineligible based on analysis of one representative claim).

Because the asserted claims recite nothing significant and unconventional beyond the abstract idea of updating software stored on a computer, they are invalid.

## V.      CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant Defendants' Motion for Judgment on the Pleadings that the asserted claims of the '683 patent and the '070 patent are invalid under 35 U.S.C. § 101.

///

///

///

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1  Because this defect cannot be cured through amendment of the Complaints, Plaintiff's claims for

2  infringement should be dismissed with prejudice and Defendants' declaratory judgment

3  counterclaims of non-infringement should be dismissed as moot.

4  Dated:    October 31, 2017                    Respectfully submitted,

5

6                                               BAKER & HOSTETLER LLP

7

8                                       By:     */s/ Teresa C. Chow*
                                               Teresa C. Chow
9                                              Jihee Ahn
                                               T. Cy Walker
10                                             Robert L. Hails
                                               Robert E. Niemeier

11
                                               *Attorneys for Defendants*
12                                             IAC SEARCH & MEDIA, INC. AND OOVOO, LLC

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, here certifies that she served a copy of the foregoing on all counsel of record via the Court's CM/ECF system.


Dated:  October 31, 2017                          */s/ Teresa C. Chow*
                                                   Teresa C. Chow

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES